FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 08, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIA R.,[1]

                    Plaintiff,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:21-cv-5091-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION,
GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION,
AND AFFIRMING THE ALJ**

          Plaintiff Maria R. appeals the denial of benefits by the Administrative Law
Judge (ALJ).  Because Plaintiff does not show that the ALJ committed
consequential error in his evaluation of Plaintiff's symptom reports or the opinions
of her medical providers, the Court denies Plaintiff's motion, grants that of the
Commissioner, and affirms the ALJ's decision.

//

---

[1] For privacy reasons, the Court refers to Plaintiff by first name and last initial or
as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

## I.    Five-Step Disability Determination

2    A five-step sequential evaluation process is used to determine whether an

3    adult claimant is disabled.[2]  Step one assesses whether the claimant is engaged in

4    substantial gainful activity.[3]  If the claimant is engaged in substantial gainful

5    activity, benefits are denied.[4]  If not, the disability evaluation proceeds to step two.

6    Step two assesses whether the claimant has a medically severe impairment

7    or combination of impairments that significantly limit the claimant's physical or

8    mental ability to do basic work activities.[5]  If the claimant does not, benefits are

9    denied.[6]  If the claimant does, the disability evaluation proceeds to step three.

10    Step three compares the claimant's impairment or combination of

11    impairments to several recognized by the Commissioner as so severe as to preclude

12    substantial gainful activity.[7]  If an impairment or combination of impairments

13    meets or equals one of the listed impairments, the claimant is conclusively

14    presumed to be disabled.[8]  If not, the disability evaluation proceeds to step four.

15

16    ───────────────

17    [2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

18    [3] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

19    [4] *Id.* §§ 404.1520(b), 416.920(b).

20    [5] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

21    [6] *Id.* §§ 404.1520(c), 416.920(c).

22    [7] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

23    [8] *Id.* §§ 404.1520(d), 416.920(d).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

Step four assesses whether an impairment prevents the claimant from performing work that was performed in the past, by determining the claimant's residual functional capacity (RFC).[9]  If the claimant can perform past work, benefits are denied.[10]  If not, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[11]  If so, benefits are denied.  If not, benefits are granted.[12]

The claimant generally has the initial burden of proof under steps one through four.[13]  If the claimant meets the required showing, at step five, the burden shifts to the Commissioner to show why the claimant is not entitled to benefits.[14]

//

/

––––––––––––––––––––

[9] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[10] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[11] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[12] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[13] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[14] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

In August 2015, Plaintiff filed applications for disability under Titles 2 and 16, alleging an onset date of March 1, 2015.[15]  Her claims were denied initially and on reconsideration.[16]

### A.    The 2018 Hearing and ALJ Decision

In February 2018, ALJ Jesse Shumway held an administrative hearing.[17] During the 2018 hearing, the ALJ received testimony from Plaintiff, vocational expert Stephanie Boeshaar, and medical expert Willie Benton Boone, MD, MS. Then, in April 2018, the ALJ issued a decision denying Plaintiff's disability applications.  In conducting the five-step sequential evaluation process, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2019.

- Step one: Plaintiff has not engaged in substantial gainful activity since March 1, 2015, the alleged onset date, through the date of the ALJ's decision.

---

[15] AR 437–38, 444–49.  Based on the application filing date, the pre-March 27, 2017 regulatory framework govern the ALJ's decision as well as the Court's analysis. *Compare,* 20 C.F.R. §§ 404.1527, 416.927, *with, id.* §§ 404.1520c, 416.920c.

[16] AR 188.

[17] AR 101–125.

- Step two: Plaintiff has the following medically determinable severe impairments: "retinal detachment and phthisis bulbi right eye, status-post enucleation in August 2017; and obesity."[18]

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff has the RFC to perform a full range of light work, subject to the following additional limitations:

  o "she can only occasionally climb ladders, ropes, and scaffolds";

  o "she can frequently stoop and climb ramps and stairs";

  o "she cannot do work that requires depth perception or more than occasional peripheral vision on the right side"; and

  o "she can have no exposure to hazards, such as unprotected heights and moving mechanical parts."[19]

- Step four: Plaintiff "is capable of performing past relevant work as an agricultural produce sorter."[20]

- Step five: "In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs

---

[18] AR 24, 191.

[19] AR 26, 194.

[20] AR 29, 197.

that exist in significant numbers in the national economy that the claimant also can perform," including the representative occupations of garment folder, tanning salon attendant, and ticket taker.[21]  Further, even if the RFC included the additional limitation of "needing a sit/stand option," Plaintiff was capable of performing the requirements of tanning salon attendant, ticket taker, and inspector/hand packager.[22]

## B.    The 2019 Remand by the Appeals Council

In March 2019, the Appeals Council found that the ALJ failed to adequately address some of the mental-health records as well as some of the limiting opinions expressed by certain medical providers.[23]  The Appeals Council remanded the matter to the same ALJ with instructions to offer Plaintiff the opportunity to have another hearing and for the ALJ to further evaluate any new evidence, certain opinions regarding Plaintiff's functional limitations, Plaintiff's mental impairments, Plaintiff's RFC, the issue of past relevant work, and—if warranted by the expanded record—the effect of the assessed limitations on Plaintiff's occupational base.[24]

---

[21] AR 198.

[22] AR 198–99.

[23] AR 209–210.

[24] AR 210–211.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

**C.    The 2019 Hearing and ALJ Decision**

On remand from the Appeals Council, the ALJ held another hearing in August 2019 via video, during which Plaintiff provided further testimony.[25] Thereafter, the ALJ issued his second decision, again denying Plaintiff's disability applications.  Though the ALJ provided additional analysis and explanation, at each of the five steps in the sequential evaluation process, the ALJ's conclusions were the same as those set forth in his 2018 decision.[26]  The only exception being that, after finding Plaintiff not disabled at step four, the ALJ did not expressly restate at step five the alternative analysis and findings set forth in his 2018 decision regarding the other representative occupations he found Plaintiff could also perform.[27]

As relevant here, in ultimately reaching the same conclusions as in 2018, the ALJ gave "some weight" to the medical opinion of Derek Leinenbach, MD, and "little weight" to that of Juan Hernandez Umana, MD.  The ALJ also gave "little

---

[25] AR 126–35.  Although it appears that vocational expert Daniel R. McKinney was available to appear at the 2019 hearing, he did not present any testimony. *See* AR 21, 418.  Also, the ALJ's 2019 decision incorrectly indicates that it was Mr. McKinney (rather than Ms. Boeshaar) who testified as the vocational expert during the initial 2018 hearing. *Compare,* AR 29, *with*, AR 101.

[26] *Compare*, AR 24–30, *with*, AR 190–99.

[27] *Compare*, AR 29, *with*, AR 198–99.

weight" to the opinion of Javier Huerta, PA.  The ALJ further explained, "As for the other opinions previously addressed in the prior decisions, the weight assigned and reasons given therein remain unchanged and adopted upon review of the additional evidence."[28]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[29]  Plaintiff then timely appealed to the Court.[30]

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[31] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[32]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33]  Because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the

---

[28] AR 29.

[29] AR 1.

[30] *See* 20 C.F.R. §§ 404.981, 422.201.

[31] 42 U.S.C. § 405(g).

[32] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[33] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ALJ's findings "if they are supported by inferences reasonably drawn from the record."[34]  The Court considers the entire record as a whole.[35]

Further, the Court may not reverse an ALJ decision due to a harmless error.[36]  An error is harmless "where it is inconsequential to the ultimate nondisability determination."[37]  The party appealing the ALJ's decision generally bears the burden of establishing harm.[38]

### IV.    Analysis

Plaintiff argues that the ALJ improperly rejected her symptom reports and erred by failing to assign adequate weight to the opinions rendered by two of her treating providers: Dr. Hernandez and PA Huerta.[39]

---

[34] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[35] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[36] *Molina*, 674 F.3d at 1111.

[37] *Id.* at 1115 (cleaned up).

[38] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[39] The Court uses "Dr. Hernandez," as it is consistent with his signature line, but the Court notes that he is also sometimes referred to in the record as "Dr. Umana." *See, e.g.*, AR 114.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**A.    Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff started experiencing serious eye problems in 2015, when she underwent cataract extraction with lens implants in both eyes.  Over the course of the next few years, Plaintiff suffered from eye conditions including a retinal detachment, diabetic retinopathy, and macular edema.  She had phthisis bulbi in her right eye, which the medical expert described as "a blind, painful eye." Ultimately, in August 2017, after three attempts at retinal-detachment repair surgery and a series of eye-injection treatments, Plaintiff underwent surgical removal (enucleation) of her right eye.[40]  She retains vision in her left eye, however, for which the treatments proved more successful.[41]

At the hearings, Plaintiff testified that her eye issues caused her to stop working in 2015, saying she could no longer see well enough to perform her former job as a produce inspector/sorter.[42]  Although she no longer experienced pain after her right eye was removed, Plaintiff said that, as of the February 2018 hearing, she still had difficulty viewing and reading things, both close and far away.[43]  She testified that even after all the treatments she has undergone, her left-eye vision remains so poor that she struggles with even simple tasks at home, saying eating

---

[40] S*ee, e.g.*, AR 106–07, AR 653, 678, 811, 1033–34.

[41] S*ee, e.g.*, AR 812, 827, 1006, 1130, 1304, 1313.

[42] AR 111–12, 114.

[43] AR 112, 116.

1

2

and cooking are particularly hard.  She explained, "Cooking [is difficult] because I can't see very well what I am putting in the food when I'm cooking."[44]

3

4

5

6

7

8

Additionally, Plaintiff described other problematic symptoms that she associates with her eyesight, obesity, diabetes, metabolic syndrome, or a combination thereof.[45]  As Plaintiff points out in her current motion, she testified to experiencing "frequent falls, dizziness, and difficulty standing and walking for long periods of time."[46]  Plaintiff suggests that these symptoms limit her to sedentary work.[47]

9

    1.    <u>The Applicable Standard</u>

10

11

12

13

14

15

The ALJ found Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms" but that her statements regarding the intensity, persistence, and limiting effects of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record."[48]  As such, and because the record does not contain

16

17

[44] AR 116.

18

19

20

[45] S*ee, e.g.*, AR 133 (Plaintiff testifying to experiencing dizziness, saying, "sometimes it's just suddenly I see dark and I fall," though she could not say how frequently this occurred.).

21

[46] ECF No. 14 at 8.  *See also* AR 112–13.

22

[47] *See* ECF No. 14 at 13.

23

[48] AR 27, 195.

affirmative evidence of malingering, the ALJ was required to support his rejection of Plaintiff's symptom reports by articulating "specific, clear and convincing" reasons backed by substantial evidence.[49]  The ALJ did so.

       2.   <u>Lack of Objective Medical Evidence</u>

The ALJ found "the objective medical evidence and clinical observations to be quite unremarkable," saying he considered "the lack of supportive objective evidence to be a particularly compelling factor undermining the claimant's symptom allegations."[50]  The ALJ then specifically explained that the record lacked evidence showing vision loss in the left eye or showing that Plaintiff was at a special risk of falling "for any reason, let alone lack of vision."[51]  Additionally, the ALJ found the record lacked any complaints by Plaintiff related to her obesity or

---

[49] *See* SSR 16-3p, 2016 WL 1119029; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

[50] AR 195.

[51] AR 28.  Although, the ALJ inaccurately stated that the record contained "*no* documented episodes of falling," *see id.* (emphasis added), his reasoning remains nonetheless valid.  Upon reviewing the entirety of the record as to the relevant period, the Court found one recorded instance in which Plaintiff reported falling after becoming dizzy while showering. *See* AR 1307 (July 2018: "patient had mild dizzy spell once, no new episodes, doing well today, patient states she is doing well at this time").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

resulting functional limitations—this, despite the fact that Plaintiff remained obese during the entire relevant period and was regularly seen by medical providers, such as for treatment of her diabetes.[52]

Although an ALJ may not disregard a claimant's testimony "*solely* because it is not substantiated affirmatively by objective medical evidence,"[53] the ALJ may nonetheless properly consider a lack of such evidence as one factor in the analysis.[54]  As discussed below, the ALJ also considered other relevant factors and gave clear and convincing reasons for why they undermine Plaintiff's symptom reports.  Thus, the ALJ did not err in finding that—in conjunction with these other factors—the lack of supportive objective medical evidence and complaints in the record weighed against giving full credit to Plaintiff's symptom reports.

    3.   <u>Testimony Inconsistent with Medical Records</u>

The ALJ did not discount Plaintiff's symptom testimony based merely on a lack of corroborating evidence; the ALJ also found that express findings in the medical record are largely inconsistent with Plaintiff's symptom testimony.  For instance, agreeing with the medical expert's testimony during the 2018 hearing, the ALJ noted that Plaintiff was "found repeatedly to have good vision in the left

---

[52] AR 28.

[53] *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis added).

[54] *See Lingenfelter*, 504 F.3d at 1040.

eye, no sensory loss, and no gait disturbance.  In addition, her subjective and objective visual fields in her left eye were repeatedly normal."[55]  Then, in writing his 2019 decision, the ALJ went on to find "subsequent post-operative eye exams did not indicate any loss of [left-eye] peripheral vision and otherwise noted normal eye movement and pupil reactivity."[56]  The ALJ's numerous citations point to substantial evidence supporting these findings, and Plaintiff does not appear to challenge them.  Aside from her symptom testimony, Plaintiff neither cites to any evidence of ongoing vision loss in her left eye, nor does she articulate any other basis for the level of overall vision impairment she alleges.[57]

The same is true of Plaintiff's claims regarding "difficulty standing and walking for long periods of time."[58]  Again, the ALJ cited to several physical exams that consistently showed a normal range of motion in all joints as well as normal

---

[55] AR 195 (cleaned up) (citing AR 615–21, 768, 773, 780, 790, 800, 817, 1004); *see also* AR 27–28, 105–111.

[56] AR 28 (cleaned up) (citing AR 1120–1134, 1288–1334).

[57] The Court need not consider matters that are not specifically and distinctly argued by a party. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Independent Towers v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

[58] ECF No. 14 at 8.  *See also* AR 112–13.

musculoskeletal, respiratory, and cardiovascular findings.[59]  Plaintiff does not directly dispute these findings, instead highlighting that because of her "morbid obesity, hyperten[s]ion, and hyperlipidemia, [she] is considered to have metabolic syndrome."[60]  She cites no evidence that connects these diagnoses, or the findings upon which they are based, to her symptom reports or asserted limitations, seemingly trying to establish such connections through general inference.[61]  But, as the Social Security Administration has explained, it would be inappropriate for an ALJ to "make general assumptions about the severity of functional effects of obesity combined with another impairment."[62]

By articulating and explaining several inconsistencies between Plaintiff's testimony and the medical evidence of record, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's claimed limitations related to vision impairment and difficulty with standing and

---

[59] AR 27 (citing AR 1120–1134, 1288–1334).

[60] ECF No. 14 at 5.

[61] *Cf.* ECF No. 14 at 5–6 (citing various records measuring data such as her weight, BMI, blood pressure, and blood sugar levels, but citing nothing tying such data or the resulting diagnoses to any functional limitations).

[62] SSR 19-2p, *Titles II & XVI: Evaluating Cases Involving Obesity* (May 20, 2019).

walking for extended periods.[63]  Moreover, even if the ALJ had erred by rejecting

Plaintiff's testimony about being unable to sit or stand for an extended period, such

error would be harmless.[64]  At the 2018 hearing, the vocational expert testified that

even if the assessed RFC were further limited to "needing a sit/stand option at

will," Plaintiff could perform the work of a tanning salon attendant, a ticket taker,

and an inspector hand packager.[65]

        4.    <u>Activity of Daily Living: Driving</u>

       While presenting testimony at each of the hearings, Plaintiff admitted that

she still sometimes drives for transportation.  Moreover, when the ALJ inquired

further, Plaintiff expressly confirmed at both hearings that she can see well enough

to read the road signs and navigate while driving.[66]

---

[63] *See Ghanim*, 763 F.3d at 1163; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

1989) (explaining that the existence—and significance—of any inconsistency

between a claimant's asserted limitation and a reported activity will necessarily

depend on the nature, level, and context of both).

[64] An error is harmless if it is inconsequential to the decision or if the ALJ's path

"may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540

U.S. 461, 497 (2004)).

[65] AR 122.

[66] AR 115, 124, 130.

When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ may properly consider any inconsistencies among the claimant's symptom reports, the reported activities, the claimant's prior statements, and/or other evidence of record.[67]  Here, it was reasonable for the ALJ to find that Plaintiff's admitted driving activity belied the severe vision-related limitations that she alleges.[68]  Indeed, because of the importance of having adequate vision when driving a vehicle, by highlighting this inconsistency in Plaintiff's testimony, the ALJ articulated a specific, clear, and convincing reason supported by substantial evidence for discounting the related symptom reports.[69]

### 5.    Conclusion as to Symptom Reports

As explained above, the ALJ gave more than one specific, clear, and convincing reason for discounting Plaintiff's symptom reports.  As such, any errors

---

[67] SSR 16-3p, 2016 WL 1119029; 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Fair*, 885 F.2d at 603.

[68] AR 195.

[69] *See Ghanim*, 763 F.3d at 1163; *see also Fair*, 885 F.2d at 603 (explaining that whether a claimant's alleged limitations is truly inconsistent with a reported activity—and the significance of any such inconsistency—will necessarily depend on the nature, level, and context of both the claimed limitation and the activity in question).

in the ALJ's other asserted reasons would be considered harmless, and the Court therefore need not address them.[70]

**B.    Dr. Hernandez's Medical Opinions: Plaintiff fails to establish prejudicial error.**

In April 2019, Dr. Hernandez, Plaintiff's treating physician, completed a Physical Functional Evaluation of Plaintiff, using a form provided by the Washington State Department of Social & Health Services.[71]  In it, Dr. Hernandez noted that Plaintiff's chief complaint—and stated reason for being unable to work—was that she cannot see with her right eye.  Describing her treatment history, Dr. Hernandez explained that Plaintiff had experienced a diabetes-related complication and eye surgery, resulting in "complete 100% blindness of her right eye."[72]

In assessing Plaintiff's workplace limitations, Dr. Hernandez opined, "Due to poor vision[,] patient at risk of falling, work related injuries; unable to work at

---

[70] *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

[71] AR 1112–14.

[72] AR 1112.

heights."[73]  He indicated that Plaintiff's "Class 3 obesity" causes her to have a moderate limitation (defined on the form as "[s]ignificant interference") in her ability to perform the basic work-related activities of carrying, pushing, pulling, reaching, and stooping.[74]  Listing those same activities—but this time including the additional activity of "seeing"—Dr. Hernandez indicated that Plaintiff's right-eye blindness causes her to have a marked limitation (defined on the form as "[v]ery significant interference with the ability to perform") in her ability to perform those same basic work-related activities.[75]  And, Dr. Hernandez opined, given Plaintiff's impairments, sedentary work is the highest level of work that she can predictably sustain "over a normal workday and workweek on an ongoing, appropriate, and independent basis."[76]

The ALJ assigned little weight to Dr. Hernandez's opinion limiting Plaintiff to sedentary work.[77]  Plaintiff argues the ALJ erred in doing so.

1.    The Applicable Standard and the ALJ's Provided Reasoning

Dr. Hernandez's medical opinions that limit Plaintiff to the sedentary exertional level are contradicted by the reviewing opinions of Dr. Leinenbach, who

---

[73] AR 1113.

[74] AR 1113.

[75] *See* AR 1113.

[76] *See* AR 1114.

[77] AR 29.

opined that Plaintiff was instead capable of performing work at the "light

exertional level with moderate environmental, postural, and motor limitations."[78]

As such, to reject Dr. Hernandez's opinions as a treating physician, the ALJ was

required to articulate "specific and legitimate reasons" supported by substantial

evidence.[79]

Here, in rejecting Dr. Hernandez's opinions, the ALJ said,

> Dr. Hernandez cites blindness and obesity as the impairments causing
> the functional limits, but he fails to offer objective evidence in support
> of his opinions or offer adequate explanation as to why right eye
> blindness and obesity physically limits the claimant to lifting,
> carrying, sitting, standing, and walking at the sedentary exertional
> level.  Moreover, this opinion is inconsistent with Dr. [Hernandez]'s
> own treatment notes, which show instead normal eye and
> musculoskeletal exams well into 2019 and are devoid of any claimant
> complaints as to her exertional abilities.[80]

2.    Lack of Support/Explanation

Although Plaintiff is correct that her right-eye blindness and obesity "are

well-established in the record,"[81] this does not change the fact that Dr. Hernandez

failed to explain how those diagnosed impairments result in the functional

---

[78] AR 1135–37.

[79] *Lester*, 81 F.3d at 830.

[80] AR 29 (cleaned up) (citing AR 1120–34, 1288–1334).

[81] ECF No. 14 at 11.

limitations he identified or the limitations are so severe.[82]  Further, nothing in Dr. Hernandez's treatment notes or the other medical records explains why Plaintiff's right-eye blindness or obesity cause such severe limitations in carrying, pushing, pulling, reaching, and stooping, much less limit her to sedentary work.

An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."[83]  Accordingly, Dr. Hernandez's failure to adequately support or explain his opinions amounts to a specific and legitimate reason, supported by substantial evidence, for assigning those opinions little weight.

_____

[82] Given the Plaintiff's lack of depth perception and right-side peripheral vision resulting from her right-eye blindness, the record arguably contains sufficient evidence and explanation to support Dr. Hernandez's opinion that Plaintiff was at risk of falling and work-related injuries.  But the assessed RFC addresses these limitations by barring work that involves exposure to hazards or "requires depth perception or more than occasional peripheral vision on the right side." *See* AR 26, 194.  Plaintiff does not explain why these limitations do not suffice.

[83] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (each listing factors for the ALJ to consider when weighing medical opinions).

### 3.    Inconsistencies with Treatment Notes

The ALJ rationally interpreted Dr. Hernandez's opinions as being inconsistent with his own treatment notes regarding Plaintiff's eye and musculoskeletal exam results.[84]  "A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes."[85]  Especially given the lack of any explanation to resolve them, these inconsistencies are "specific and legitimate reasons that are supported by substantial evidence" for discrediting Dr. Hernandez's opinions.[86]

### 4.    Conclusion as to Dr. Hernandez's Medical Opinions

As explained above, the ALJ gave more than one specific and legitimate reason for discrediting Dr. Hernandez's medical opinions.  As such, any errors in the ALJ's other asserted reasons would be considered harmless, and the Court therefore need not address them.[87]

---

[84] *See, e.g.*, AR 1130, 1304, 1305, 1315.

[85] *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017)

[86] *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) ("Under certain circumstances, a treating physician's opinion on some matter may be entitled to little if any weight." (quoting 20 C.F.R. § 404.1527)).

[87] *See Carmickle*, 533 F.3d at 1162–63.

1

2

**C.    PA Huerta's Other-Source Opinions: Plaintiff failed to establish prejudicial error.**

3

PA Huerta, one of Plaintiff's treating providers, completed three separate

4

forms regarding Plaintiff's diagnoses and resulting functional limitations.  In

5

August 2015, he noted Plaintiff has "problems [concerning] her vision" and is

6

overweight with "problems [with] balance."[88]  He indicated that Plaintiff's diabetic

7

retinopathy and "DJD" each cause a marked limitation in her ability to perform

8

basic work activities, but he did not specify which work activities were affected.[89]

9

PA Huerta opined that Plaintiff is permanently unable to meet the demands of

10

even sedentary work.

11

Then, in June 2017, PA Huerta wrote that Plaintiff's diagnoses included

12

uncontrolled diabetes, blindness in her right eye, hypertension, and

13

hyperlipidemia.[90]  He opined that if Plaintiff were to work full time, she would

14

"miss 4 or more days per month" on average.  A few months later, in September

15

2017, PA Huerta wrote that Plaintiff's chief complaints were blindness in the right

16

17

18

---

19

[88] AR 623–25.

20

[89] AR 1072.

21

[90] AR 681–82.  The Court presumes the "DJD" notation refers to degenerative joint

22

disease. *See Degenerative joint disease (DJD)*, Stedmans Medical Dictionary,

23

254120 (2014) (synonym for osteoarthritis).

eye after enucleation, a history of diabetes, hypertension, and "CRF."[91]  He opined that Plaintiff's "blindness" was so severe that she could not perform basic work-related activities and that her diabetes also would cause a moderate limitation in work-related activities.  PA Huerta again opined that Plaintiff would be unable to meet the demands of even sedentary work, explaining that the "prognosis [is] bad of [the left] eye also."[92]

The ALJ assigned little weight to PA Huerta's opinions.  Plaintiff argues the ALJ erred in doing so.

1.    The Applicable Standard and the ALJ's Provided Reasoning

Based on the filing date of Plaintiff's applications, as a physicians' assistant, PA Huerta is considered an "other source" under the applicable Social Security Act regulations.[93]  Accordingly, to discount PA Huerta's opinions, the ALJ was required to give "germane reasons" supported by substantial evidence.[94]

---

[91] AR 1077–79. The Court presumes the "CRF" notation refers to chronic renal failure. *See* Ayman Karkar, *Caring for Patients with CRF: Rewards and Benefits*, National Library of Medicine, (2011) *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3097050/#:~:text=Chronic%20renal %20failure%20(CRF)%20or,resulting%20in%20permanent%20kidney%20failure.

[92] AR 1117.

[93] *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2015).

[94] *See Molina v*, 674 F.3d at 1111.

In assigning little weight to PA Huerta's opinions, the ALJ explained:

> [I]n all three instances he fails to offer objective evidence or explanation in support of his opinions or offer adequate explanation as to why right eye blindness physically limits the claimant to lifting, carrying, sitting, standing, and walking at less than the sedentary exertional level when primary care records note no such restrictions, and the claimant reported a wide variety of daily activities that exceed these limitations, including performing personal care, spending time with her grandchildren, shopping, preparing meals, and going out socially. I find his opinions unsupported and markedly inconsistent with the longitudinal record.[95]

2. <u>Specific and Germane Reasons</u>

For the same reasons discussed above regarding Dr. Hernandez's opinions, the ALJ did not err in finding PA Huerta failed to adequately support or explain his opinions; nor did the ALJ err in finding those opinions inconsistent with the longitudinal record. Even considering the entirety of the record, it is unclear how the diagnoses and problems that PA Huerta lists in his opinions are connected to the functional limitations he opined on the forms.[96] PA Huerta's opinions appear largely inconsistent with the results of Plaintiff's left-eye examinations and other

---

[95] AR 28 (cleaned up).

[96] For instance, Court is unable to determine how PA Huerta arrived at the diagnoses of degenerative joint disease or chronic renal failure—let alone how those conditions would result in the limitations he attributed to them. *Cf., e.g.,* AR 764, 854, 1122 (each showing glomerular filtration rates seemingly negative for chronic kidney disease or kidney failure); AR 854 (same in July 2017); AR 1122 (same in April 2018).

physical examinations, and he failed to offer any explanation capable of resolving those inconsistencies.[97]  It is also unclear to what extent PA Huerta based the functional limitations he assigned to Plaintiff's "blindness" on his poor prognosis for Plaintiff's left eye. And, contrary to PA Huerta's prognosis, the medical records show that Plaintiff's left eye improved.  The ALJ therefore provided specific and germane reasons supported by substantial evidence for assigning little weight to PA Huerta's opinions.

Moreover, in noting that PA Huerta's opinions were inconsistent with Plaintiff's activities, the ALJ cited to his prior analysis of Plaintiff's reported activities, including her admission to driving.[98]  For the same reasons already discussed above regarding Plaintiff's symptom reports, it was reasonable for the ALJ to find the activity of driving inconsistent with the extreme vision-based limitations opined by PA Huerta.  Thus, this was yet another specific and germane reason supported by substantial evidence for assigning little weight to PA Huerta's opinions.

3.    Conclusion as to PA Huerta's Opinions

As explained above, the ALJ gave more than one specific and germane reason for discrediting PA Huerta's opinions.  Any errors in the ALJ's other

---

[97] *See, e.g.*, AR 615–21, 768, 773, 780, 790, 800, 817, 1004, 1120–1134, 1288–1334.

[98] *See* AR 28 (citing to AR 195).

asserted reasons would therefore be considered harmless, and the Court therefore need not address them.[99]

## V.     Conclusion

Plaintiff failed to establish that the ALJ substantially erred in concluding that she is not disabled for purposes of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED:

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2.     The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.     The decision of the ALJ is **AFFIRMED**.

4.     The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

5.     The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 8th  day of September 2022.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

---

[99] *See Carmickle*, 533 F.3d at 1162–63.